IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Josie Jaimes, et al.,  )
              Plaintiffs,  )
   vs.  )   Civil No. C 74-68
Toledo Metropolitan Housing  )
Authority, et al.,  )   MEMORANDUM AND ORDER
             Defendants.  )

YOUNG, J:

    This cause came to be heard upon motion of plaintiffs for a preliminary injunction. A hearing on the motion was held March 31, 1975, wherein the parties presented evidence by testimony and stipulation.

    Plaintiffs in this class action suit[1] seek to compel the defendant Toledo Metropolitan Housing Authority (hereinafter TMHA) and the individual defendants, the director of TMHA and the board members of TMHA, to seek cooperation agreements from the Toledo suburban communities of Sylvania, Maumee, Oregon, Ottawa Hills, Holland, Whitehouse, Waterville, Berkey and Harbor View.[2] Plaintiffs allege in their complaint that TMHA has not undertaken its affirmative duty of placing housing for low-income persons outside areas of racial and low income concentration. It appears that while TMHA has jurisdiction to provide low-income housing throughout all of Lucas County except Harding Township,[3] cooperation agreements have only been obtained from the City of Toledo and Lucas County.[4] Plaintiffs contend that the defendant Authority has steadfastly refused to seek cooperation agreements from the suburban communities despite repeated requests to do so.

    The defendant Authority argued at the hearing that the immediate problem involved with this motion is the disposition of 120 family units which are presently allocated for development in the City of Toledo from the Department of Housing and Urban Development (HUD). TMHA contends that under the United States Housing Act of 1937, 42 U.S.C. §1401 et seq., as amended by Pub. L. No. 93-383 (August 22, 1974)(hereinafter Act), the allocation of 120 conventional housing units will be lost if construction of the units does not begin soon because of a change in the scheme of assistance for low-income housing contained in the 1974 amendments to the Act. The evidence at the hearing showed that HUD's administrative

---

1. The parties have stipulated that the class of plaintiffs consists of all low income minority persons residing in the Toledo metropolitan area who, by virtue of their race and poverty, are unable to secure decent, safe and sanitary housing in the Toledo metropolitan area, at rents or prices which they can afford without assistance from the Toledo Metropolitan Housing Authority, and who would like to have the opportunity to live in public housing in suburban communities outside the City of Toledo.

2. Cooperation agreements are agreements between the governing body of the locality involved and the public housing agency providing for local cooperation as required by the Secretary of the Department of Housing and Urban Development (hereinafter Secretary). 42 U.S.C. §1437c(e)(2), Pub. L. No. 93-383, Title II, §5(e)(2)(August 22, 1974), amending 42 U.S.C. §1415(7)(b).

3. Ohio Rev. Code §3735.27 et seq.

4. Defendant TMHA's Answer at ¶9.

- 2 -

policy is to terminate any existing contracts for the construction of conventional low-income housing not substantially underway by July 1, 1975, because of the requirements for administering the new program of housing assistance. TMHA argues that there is a present demonstrated need for public housing in the City of Toledo, with whom it has an existing cooperation agreement, which would not be diminished by the probable loss of the 120 units presently allocated. TMHA states that the time required to prepare proposals for presentations to the suburban communities necessary for securing cooperation agreements would make it impossible to have any project involving the 120 units under construction by the July 1st deadline. It is also the position of TMHA that HUD officials have informed it that cooperation agreements are not required for new §8 housing[5] after July 1, 1975, thus it would be a futile act to attempt to procure the cooperation agreements at this time.

The Court finds that a preliminary injunction should not issue in this case in its present posture. The purpose of a preliminary injunction is

> to guard against a change in conditions which will hamper or prevent the granting of such relief as may be found proper after a trial of the issues. Its ordinary function is to preserve the status quo and it is to be issued only upon a showing that there would otherwise be danger of irreparable injury. United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939).

See also C. Wright & A. Miller, Federal Practice and Procedure, §2947 at 423 (1973).

It has not been demonstrated from the evidence adduced at the hearing on the present motion that there exist any circumstances that require this Court to exercise its extraordinary power of preliminary injunction to preserve the status quo. It appears that TMHA is preparing to advertise for bids for the 120 units under the previously allocated HUD low-income housing program. Plaintiffs contended during argument that the placement of 120 units is the last opportunity for requiring dispersal of low-income housing into Toledo's suburbs. The Court does not find this argument persuasive. The new §8 housing provisions will provide opportunities for dispersed housing in the metropolitan suburbs. The main change occasioned by the July 1 cut-off date will be the type of administration of the low-income housing assistance, with an emphasis of assistance coming through §8 rather than conventional housing.[6]

---

5. Section 8 housing refers to the provision of Title II, §8 of the 1974 amendments to the Act that sets forth a program of assistance for low-income family housing.
6. Conventional housing is that form of public housing where the local housing authority has the project constructed on a preselected site and then leases units for low-income housing.

The Court finds that the prospective loss of 120 units to the City of Toledo, which has an undisputed need for such low-income housing, greatly outweighs plaintiffs' present need for injunctive relief which would effectively preclude TMHA from taking the necessary actions to secure the construction of the 120 units by July 1st. Granting a preliminary injunction as requested would not maintain the status quo in this case pending a hearing on the merits, but would effectively foreclose the construction of the 120 units presently under reservation for the City of Toledo.

The larger issue presented in the present case is whether TMHA should be required to take whatever steps are necessary to insure that low-income housing is available throughout its entire jurisdictional area, which would include the suburban areas of Toledo. The parties stipulated into evidence the record of Joseph Skillken & Co. v. City of Toledo, Civ. No. 74-202, the memorandum decision of which is published in 380 F. Supp. 228 (N.D. Ohio 1974). The evidence submitted in that case led this Court to conclude that the City of Toledo is a racially segregated city with minority groups heavily concentrated in limited parts of the city known as the "Southwest Corridor." 380 F. Supp. at 231. TMHA manages approximately 3,000 units of public housing in the City of Toledo and 52 units in Lucas County. Until very recently, public housing projects were placed in areas adjacent to already highly concentrated minority housing, further adding to the segregated housing pattern of Toledo. Id. Approximately seventy percent of the TMHA family public housing is occupied by minorities.[7] The waiting list for family unit public housing, presently numbering 1,800 applicants, is composed of seventy percent blacks and Mexican-Americans.[8] The foregoing facts indicate that any decision concerning the location of low-income, publicly assisted housing has a disproportionate impact on minorities.[9] If the effect of any action or inaction by TMHA in the location of low-income housing is to exclude people from certain areas of Lucas County, such as the suburban communities, because of their race, then those actions must be justified by some compelling governmental interest. In re Griffiths, 413 U.S. 717 (1973); Kramer v. Union Free School District, 395 U.S. 621 (1969); Loving v. Virginia, 388 U.S. 1 (1967); McLaughlin v. Florida, 379 U.S. 184 (1964). That determination must await a trial on the merits.

---

7. Deposition of Carl Barrett at 7-8.

8. Plaintiffs' Complaint at ¶20; Defendants' Answer at ¶9.

9. Mr. John Riordon testified at the hearing that HUD recognizes the adverse effect of concentrating low-income housing in areas of racial and low-income concentration and has set guidelines for site selection which requires sites to be dispersed in suburbs and areas away from racial and low-income concentration.

- 4 -

On the present record, the Court is not prepared to order the extraordinary remedy of injunctive relief which would require TMHA to seek cooperation agreements with the suburban cities and villages surrounding Toledo. In the first place, those municipalities clearly cannot be compelled to enter into cooperation agreements. <u>Mahaley v. Cuyahoga Metropolitan Housing Authority</u>, 500 F.2d 1087 (6th Cir. 1974). The assistance provided to communities under the Act need not be accepted by the local governments. <u>James v. Valtierra</u>, 402 U.S. 137, 140 (1971).

Furthermore, the defendants have contended that cooperation agreements are not required by the new provisions of the Act. That issue is far from clear. A strict reading of the new provisions of the Act would compel a contrary conclusion. The 1974 amendment provides at §5 of Title II:

> (e). In recognition that there should be local determination of the need for low-income housing to meet needs not being adequately met by private enterprise -
>
>   *   *   *
>
> (2) the Secretary shall not make any contract for loans. . . or for annual contributions pursuant to this Act unless the governing body of the locality involved has entered into an agreement with the public housing agency providing for local cooperation required by the Secretary pursuant to this Act.

A literal reading of the statute would thus still require cooperation agreements whenever any funds, whether for loans or annual contributions, are expended under the Act, whether for §8 or other programs. The legislative history indicates that §5(e):

> Would provide that the Secretary may not enter into a contract with a public housing agency for preliminary loans for surveys and planning in respect to a project unless the local governing body involved has approved by resolution the application of the public housing agency and unless the public housing agency has demonstrated that there is a need for the low-income housing which is not being met by private enterprise. This subsection also would provide that the Secretary may not enter into a contract for loans (other than preliminary loans) or for annual contributions unless the governing body of the locality has entered into an agreement with the public housing agency providing for the local cooperation required by the Secretary pursuant to the Act. S. Rep. 93-693, 93d Cong., 2d Sess. (1973); <u>U.S. Code Cong. & Ad. News</u> 3893 (1974).

However, the testimony of Mr. Riordon, acting area program coordinator for HUD whose jurisdiction includes Lucas County, indicated that HUD officials do not believe that cooperation agreements are required for the housing program specified in §8 of the amended Act. This conclusion does not seem to square with the language of §5(e)(2).

The recent amendments of the Act also provide at §213 that upon receiving an application for housing assistance under the Act and under statutes, the Secretary must notify the unit of local government involved

within ten days and give it an opportunity to respond to the application if the local government has an approved assistance plan.[10] This notice must be given under the current regulations applicable to the new §8 housing.[11] It could be argued, and apparently HUD officials are so interpreting the new Act and regulations, that the notice provisions supercede the cooperation agreement requirements as to §8 housing.

The only thing clear at this point in the new programs of assistance for low-income housing under the Act, including §8 housing, is that HUD guidelines require the dispersal of publicly assisted housing out of areas of racial and economic concentration. 24 C.F.R. §1273.103(j), 39 Fed. Reg. 45173 (Dec. 30, 1974). The Court is likewise committed to the principle of dispersal of low-income housing throughout the full extent of TMHA's jurisdiction, including the communities surrounding the City of Toledo. The exact degree of local government involvement in the determination of location of the housing is uncertain at this time because of the recent changes in the law and regulations thereunder. Under these circumstances, the Court does not believe that TMHA should be required to expend what may be needless time and money to obtain cooperation agreements from the surrounding communities until it has been clearly demonstrated that such agreements are required for the type of housing funding that will actually be available to TMHA for utilization. This determination must wait for a more complete exposition by the parties as to exactly what the new HUD programs will means as to the dispersal of low-income housing in the Toledo area. Plaintiffs' motion for a preliminary injunction will therefore be denied.

It seems unfortunate that while this case has now been pending for a year, the defendant TMHA does not seem to have made any effort whatever even to make a preliminary exploration of the possibilities of securing cooperation agreements with any of the local governments within its boundaries. It was clear from the evidence at the preliminary injunction hearing that obtaining such agreements would require preparation of quite definite programs to be offered in areas within which a cooperation agreement is sought. Granted that the

---

10. An approved assistance plan is a plan submitted and approved under Title I of the Housing and Community Development Act of 1974, 42 U.S.C. §5301 et seq., or if the local government unit is not participating in the community development program, a housing plan approved by the Secretary.

11. 24 C.F.R. §1275.205(b), 40 Fed. Reg. 3740 (Jan. 23, 1975) (existing housing); 24 C.F.R. §1277.103, 39 Fed. Reg. 45134 (Dec. 30, 1974)(substantially rehabilitated housing); 24 C.F.R. §1273.208(b), 39 Fed. Reg. 45177 (Dec. 30, 1974) (new construction).

- 6 -

staff of TMHA is not large, and has a heavy workload, this defendant should realize that if it does nothing about these matters until this case comes on for final disposition, if the final result is an order to TMHA to seek cooperation agreements, the Court may find it very difficult to give it more than an extremely short time to draft proper plans and requests for such agreements.

Therefore, for the reasons stated herein and for good cause appearing, it is

ORDERED that the motion of plaintiffs for a certification as a class action should be and hereby is granted, with the class of plaintiffs as stipulated by the parties conditionally certified as follows:

> All low-income minority persons residing in the Toledo metropolitan area who, by virtue of their race and poverty, are unable to secure decent, safe, and sanitary housing in the Toledo metropolitan area, at rents or prices which they can afford without assistance from the Toledo Metropolitan Housing Authority (TMHA), and who would like to have the opportunity to live in public housing in suburban communities outside the City of Toledo.

and it is

FURTHER ORDERED that the motion of plaintiffs for leave to shorten time for answering interrogatories and producing documents filed March 14, 1975 and an application filed March 17, 1975 for an order shortening time to respond to the plaintiffs' motion for leave to shorten time for answering interrogatories and producing documents should be and hereby are dismissed as moot; and it is

FURTHER ORDERED that the motion of plaintiffs for a preliminary injunction should be and hereby is denied.

IT IS SO ORDERED.

_____
United States District Judge

Toledo, Ohio.