IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Josie Jaimes, et al., )
)
        Plaintiffs, )  Civil No. C 74-68
  vs. )
Toledo Metropolitan Housing Authority, )
et al., )  MEMORANDUM AND ORDER
        Defendants. )
)

- - -

YOUNG, J:

    This cause comes before the Court upon motion by defendants Hills, Morrow, Lydens, and the United States Department of Housing and Urban Development (hereafter collectively HUD) to dismiss the complaint for lack of standing and for mootness.

    HUD contends that plaintiffs lack standing because they have not alleged and cannot demonstrate a probability that suburban communities would accept cooperation agreements with Toledo Metropolitan Housing Authority (hereafter TMHA); recently renamed Lucas County Metropolitan Housing Authority) to build low-income housing units in their communities. Because plaintiffs cannot do this, the Court cannot grant relief that would enable them to live in the suburban residential communities of Toledo. If the Court cannot grant the relief requested, HUD reasons, there is no justiciable case or controversy or, alternatively, plaintiffs incur no cognizable damage sufficient to confer standing upon them. To support this argument, the federal defendants rely on Warth v. Weldin, 422 U.S. 490 (1975).

    Plaintiffs respond that the relief they seek is more than the execution of cooperative agreements with suburban communities; they seek to compel HUD to approve and implement a metropolitan dispersed-housing plan. Such a plan would locate low-income housing in Toledo suburbs if HUD affirmatively acts, as the Fair Housing Act requires, to eliminate racial housing patterns. The named plaintiffs are former residents of Toledo suburbs who have been denied the opportunity to remain in these areas because existing low-income housing is located only in racially segregated neighborhoods in the central city.

    The Court finds that the named plaintiffs have standing to bring this action because they have alleged immediate and personal injury to themselves resulting from the asserted illegal action or inaction of HUD. In Warth, supra, the Supreme Court distinguished the precise circumstances of the instant action from the situation in the case then before it. The Supreme Court acknowledged the standing of low-income, minority-group plaintiffs, to challenge zoning restrictions that applied to particular housing projects designed to supply low-income housing. Warth, supra at 2209. Plaintiffs' standing in this case is even stronger in view of HUD's statutory obligation to provide public housing on a non-discriminatory basis. Plaintiffs in this action are the actual tenant claimants who would concretely benefit from fulfillment of that obligation. See Simon v. Eastern Ky. Welfare Rights Organization, ___ U.S. ___, 96 S.Ct. 1917, 1925 (1976).



It is true that plaintiffs may be unable to demonstrate that suburban communities will in fact sign cooperation agreements for publicly financed housing, but to require plaintiffs do so here and elsewhere would impose an insurmountable barrier to all litigation involving voluntary actions by non-litigant third parties. The purposes of the Fair Housing Act mustnot be thwarted by erecting such a barrier to reviewing alleged violation of the Act.

Second, HUD contends that this action is moot because TMHA has attempted to obtain cooperation agreements for low-income housing with out-lying communities, but these communities have declined to accept TMHA offers. TMHA's attempt to obtain cooperative agreements took the form of a letter of invitation dated September 10, 1975, stating in part:

> In order to place housing in your community it will
> be necessary to have an executed Cooperation Agreement.
> Enclosed is a HUD Form Cooperation Agreement which we
> would ask that you review and have executed by the appro-
> priate officials in your community. The Department of
> Housing and Urban Development has placed a time limit of
> September 30, 1975, for execution of the Cooperation
> Agreement so time is of the essence."

HUD identifies no other efforts by TMHA to obtain cooperation agreements or to take other measures to locate low-income housing in the suburbs in the absence of such agreements.

In spirit if not in substance the TMHA invitation to suburban communities to sign the agreements is an invitation to decline the housing projects offered. The recipient of the letter is informed that he will be "contacted" to explore the agreement further, but is presented with a flat twenty day deadline in which to have appropriate officials execute an enclosed HUD Form Cooperation Agreement. In a matter as legally complex and politically sensitive as the allocation of public housing, much more is required of all defendants to demonstrate best efforts than a pro forma letter of solicitation.

HUD fails to identify any strenuous efforts on its own part to disperse public housing in out-lying communities. Paragraph 35 of the complaint alleges that HUD has

> Failed and refused to take all necessary, appropriate
> and effective action to ensure that TMHA seek cooperation
> agreements and resolutions from the local governing
> bodies within its jurisdiction and that public housing
> be located in the suburban communities . . . and [has]
> failed and refused to impose sanctions within [its]
> power to impose.

The complaint alleges that HUD has knowingly supported TMHA practices, producing housing units in racially segregated and central city neighborhoods. More grave is the allegation that HUD has instructed TMHA not to seek cooperation agreements from other local governing bodies outside the City of Toledo. HUD has proffered no evidence that nullifies these allegations. This action is far from moot.

THEREFORE, for the reasons stated, good cause appearing, it is

ORDERED that the motion of the federal defendants to dismiss this action be, and it hereby is, overruled.

IT IS SO ORDERED.

_____
United States District Judge

Toledo, Ohio.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSIE JAIMES, et al.,

    Plaintiffs,

v.

TOLEDO METROPOLITAN HOUSING
AUTHORITY, et al.,

    Defendants.

Civil Action
No. C. 74-68

Hon. Don J. Young

## MOTION TO DISMISS

The federal defendants hereby move the Court to dismiss the above styled case. The grounds for this motion are that the case is moot and, furthermore, plaintiffs lack standing.

The court is respectfully referred to the memorandum brief filed in support hereof.

Respectfully submitted,

_____
REX E. LEE
Assistant Attorney General


FREDERICK M. COLEMAN
United States Attorney

By: _____
PATRICK J. FOLEY
Assistant United States Attorney

_____
STANLEY D. ROSE

_____
DAVID EPSTEIN

_____
PAUL T. MICHAEL

Attorneys, Department of Justice
Washington, D. C. 20530

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Motion of the Federal Defendants and Memorandum Brief in Support Thereof were served upon the following parties by United States mail this 30th day of September, 1975:

Mr. William M. Connelly
Openlander, Callahan & Connelly,
833 National Bank Building
Toledo, Ohio 43604

Mr. Joseph R. Tafelski
740 Spitzer Building
Toledo, Ohio 43604

Mr. Jay Mulkeen
Suite 410
1425 N. Street, N.W.
Washington, D. C. 20005

*Paul T. Michael*
PAUL T. MICHAEL

OPTIONAL FORM NO. 10
JULY 1973 EDITION
GSA FPMR (41 CFR) 101-11.6

UNITED STATES GOVERNMENT

# Memorandum

TO : Mr. Frederick M. Coleman
United States Attorney
Toledo, Ohio 43624

Mr. Rex E. Lee
Assistant Attorney General
Civil Division

FROM : Stanley D. Rose, Chief
Economic Litigation Section

RECEIVED
OCT 1 1 39 PM '75
U.S. ATTORNEY'S OFFICE
TOLEDO, OHIO

DATE: SEP 30 1975

REL:SDR:PTMichael:emm
145-17-804

SUBJECT: Josie Jaimes, et al. v. Toledo Metropolitan Housing Authority, et al., Civil No. C 74-68 (N.D. Ohio)

Attention: Mr. Patrick J. Foley
Assistant U. S. Attorney

Please find enclosed various pleadings of the government in the above referenced case which sould be filed as soon as possible. Service on opposing counsel has been made by this office.

Enclosures



Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan

5010-110